1
2
3
4
5

UNITED STATES DISTRICT COURT

6

NORTHERN DISTRICT OF CALIFORNIA

7

8   SWISS RE INTERNATIONAL SE,
    SUCCESSOR IN INTEREST TO ZURICH          Case No.  16-cv-00863-SI
    SPECIALTIES LONDON, LTD.,
9
            Plaintiff,
10                                           ORDER GRANTING PLAINTIFF'S
        v.                                   MOTION FOR PARTIAL SUMMARY
11                                           JUDGMENT
    COMAC INVESTMENTS, INC., *et al*.,       Re: Dkt. Nos. 32, 36, 38
12
            Defendants.
13

14          On September 2, 2016, the Court held a hearing on plaintiff's motion for partial summary

15   judgment.  For the reasons set forth below, the Court GRANTS the motion.

16

17                                        BACKGROUND

18          Plaintiff Swiss Re International SE ("SRI"), successor in interest to Zurich Specialties

19   London, Ltd. ("ZSLL") (hereinafter, SRI and ZSLL are jointly referred to as "ZSLL"), filed this

20   lawsuit seeking declaratory relief concerning its duty to defend and indemnify defendant Comac

21   Investments, Inc. ("Comac") under four commercial liability insurance policies ZSLL issued to

22   Comac covering the time period of June 19, 1998 through June 19, 2002.  This declaratory relief

23   action arises from an underlying case filed on August 14, 2014 entitled *200-298 Portola Drive*

24   *Homeowners' Association v. Comac Investments, Inc.*, San Francisco Superior Court Case No.

25   CGC-14-541154 ("Underlying Action").  Dkt. No. 33-3.[1]  In the Underlying Action, Portola Drive

26   Homeowners' Association ("Association") seeks in excess of $5 million in damages for numerous

27

28          [1]  The Court GRANTS plaintiff's request for judicial notice of the state court documents.

United States District Court
Northern District of California

construction defects at a development of 23 units and 7 townhomes (the "subject premises"). The alleged construction defects include reverse sloped decks, negative sloping of wall caps, open roof eaves, and lack of sealant on lag bolts. Dkt. No. 33-6 at ¶¶ 30, 37, 42, 47, 101. The Association alleges that these construction defects have resulted in significant water damage and flooding to the subject premises. *Id*. Construction of the subject premises was completed in 1996. *Id*. at ¶ 28.

Pursuant to California Code of Civil Procedure § 337.15, latent construction defect claims are subject to a ten-year statute of repose, which commences upon substantial completion of the construction. Cal. Code Civ. Proc. § 337.15. The statute of repose is not subject to equitable tolling. *See Lantzy v. Centex Homes*, 31 Cal. 4th 363, 367 (2003). The only exception to the statute of repose is provided in subsection (f), which allows for "actions based on willful misconduct or fraudulent concealment" after the ten years have run. To avoid the ten-year statute of repose, the Association's first amended complaint in the Underlying Action alleges, *inter alia*, that the construction defects "would have been observable by any knowledgeable contractor or supervisor, [and that] any contractor who chose not to remedy them would be doing so with actual or constructive knowledge that injury was a probable result." Dkt. No. 33-6 at ¶¶ 53, 55.

In the Underlying Action, ZSLL is representing Comac subject to a complete reservation of rights. ZSLL reserved the right to assert that the terms of the insurance policies were not met, and that the Underlying Action was subject to the "expected or intended injury" policy exclusion and/or Cal. Ins. Code § 533, which precludes insurer liability for willful acts of insureds. ZSLL also reserved the right to file this action for declaratory relief and/or seek reimbursement of expenditures in the defense of the Underlying Action. The defendants in this case are Comac, the general contractor and/or developer for the subject premises; the Association; and Sirius America Insurance Company ("Sirius"), successor in interest to Mutual Service Casualty Insurance Company ("MSCI"), which also issued commercial liability insurance policies to Comac. Dkt. No. 1 at ¶¶ 4, 13. Sirius filed a Notice of Non-Opposition to ZSLL's Motion for Partial Summary Judgment. Dkt. No. 35. Comac filed a Notice of Joinder in the Association's Opposition. Dkt.

No. 37.[2]

ZSLL's complaint alleges the following causes of action: (1) declaratory relief that ZSLL does not have, and never did have, a duty to defend Comac in the Underlying Action as a matter of law; (2) declaratory relief that ZSLL does not have a duty to indemnify Comac in the Underlying Action as a matter of law; (3) reimbursement for fees and costs ZSLL has incurred to defend Comac for non-covered claims; (4) equitable contribution from Sirius in the event this Court determines ZSLL has an obligation to defend and/or indemnify Comac in the Underlying Action; (5) equitable subrogation from Sirius in the event this Court determines ZSLL has an obligation to defend and/or indemnify Comac in the Underlying Action; and (6) declaratory relief that Sirius is obligated to defend and indemnify Comac equally with ZSLL.  Dkt. No. 1 at ¶¶ 39-72.

## I.     Terms of the Policy

The policy's liability insuring clause for property damage provides as follows:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:
>
> > (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and
> >
> > (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

---

[2]  ZSLL asserts that in the related case *Sirius America Ins. Co. v. Comac*, 3:15-cv-03462 SI, Sirius and Comac disputed whether Sirius had a duty to defend and/or indemnify Comac in the same Underlying Action under a "nearly identical" policy that MCSI had issued to Comac.  The Association was not a party to that case.  In response to a motion for summary judgment in the *Sirius* action, the parties reached a settlement and Comac stipulated there was no coverage under the policies and Comac acknowledged Sirius never had a duty to defend or indemnify Comac in the Underlying Action.  Dkt. Nos. 31, 32 in 3:15-cv-03462 SI.

United States District Court
Northern District of California

b. This insurance applies to "bodily injury" and "property damage" only if:

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

> (2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Dkt. No. 33-7 at 8. The word "occurrence" is defined in Section V as follows:

> 12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*Id.* at 19.  The "expected or intended injury" exclusion in Coverage A, which covers bodily injury and property damages liability, states in relevant part:

2. **Exclusions**

This insurance does not apply to:

a. **Expected or Intended Injury**

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.  *Id.* at 8

## II.    The Underlying Action

On August 14, 2014, the Association filed the Underlying Action against Comac in San Francisco County Superior Court, alleging Comac's responsibility for construction defects at the subject premises.  On August 25, 2015, the Association filed its First Amended Complaint.  In the First Amended Complaint, the Association alleges that Comac's Responsible Managing Officer ("RMO"), Brian Gerard McEvoy, observed defective workmanship of the subcontractors working on the subject premises, but did not correct the defects in order to not incur additional costs.  Dkt. No. 33-6 at ¶¶ 33-55.  Among the Association's allegations are:

> 33. BRIAN GERARD MCEVOY observed the reverse slope of the joists and substrate in discharge of his responsibilities to exercise direct supervision and control pursuant to *California Business & Professions Code* § 7068.1 as Qualify Partner of the General Contractor, JBM&K and RMO of the builder, COMAC.

United States District Court
Northern District of California

. . . .

35. BRIAN GERARD MCEVOY, charged with supervising actual construction, making technical and administrative decisions, checking jobs for proper workmanship, and direct supervision on construction job sites pursuant to *California Code of Regulations* §823(b), made the decision not to incur the cost to correct the reverse slope condition, but rather directed that that condition be covered up by placement of the mortar bed and tile. The decision was made in order to maximize profit for COMAC, developer of the project, of which he was a partner.

36. Because of that decision to avoid the cost of remedying this improper workmanship, the reverse slope of the joists and substrate was invisible once the mortar bed and tile were placed. Once COMAC decided to cover up this defect, it was not discoverable by regular visual inspections, which were properly conducted by Plaintiff pursuant to *California Civil Code* § 5550(a).

*Id.* at ¶¶ 33, 35-36. The Association further alleges:

53. As the above conditions would have been observable by any knowledgeable contractor or supervisor, any contractor who chose not to remedy them would be doing so with actual or constructive knowledge that injury was a probable result. Likewise, any knowledgeable construction supervisor who chose not to direct the contractor to remedy the condition would have done so with actual or constructive knowledge that injury was a probable result.

. . . .

55. The actions of Defendant COMAC INVESTMENTS, INC., and other DEVELOPER DEFENDANTS, JBM&K CONSTRUCTION, and DOES 1 through 500 and BRIAN GERARD MCEVOY amount to reckless disregard and/or willful misconduct as defined by *California Code of Civil Procedure* § 337.15(f) and *Acosta v. Glenfed Development Corp.*, 128 Cal. App. 4th 1278 (2005).

*Id.* at ¶¶ 53, 55.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to produce evidence showing the absence of a genuine issue of material fact. *Id.* at 325. Rather, the burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Id.*

United States District Court
Northern District of California

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(4).

## DISCUSSION

ZSLL contends that it does not have a duty to defend or indemnify Comac in the Underlying Action because (1) Comac's alleged willful misconduct cannot constitute an "accident" under the policies, and (2) the policies exclude property damage "expected or intended from the standpoint of the insured." Relatedly, ZSLL contends that there is no coverage for willful acts, which are precluded from coverage in California under Cal. Ins. Code § 533.

"To prevail in an action seeking declaratory relief on the question of the duty to defend, 'the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot.'" *Delgado v. Interinsurance Exchange of the Automobile Club of So. California*, 47 Cal.4th 302, 308 (2009) (quoting *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th at 287, 300 (1993)). "The duty to

United States District Court
Northern District of California

defend exists if the insurer 'becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement.'" *Id.* (quoting *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 19 (1995)).

## I.    "Accident"

The ZSLL policies require that "[t]he . . . 'property damage' must be caused by an 'occurrence,'" which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." ZSLL argues that there is no coverage for the Underlying Action because the Association's complaint alleges willful misconduct, which by definition cannot be an "accident." ZSLL argues that insurance protects against contingent or unknown risks, and intentional acts are deemed purposeful, not accidental. ZSLL argues that the allegations that Comac intentionally covered up specific construction defects to avoid the cost of fixing them during construction cannot be labeled as "accidental," and thus there is no coverage.

The Association argues that the Association's complaint in the Underlying Action does allege an "accident" because the Association does not allege that Comac's principal McEvoy intended or expected to cause damage. The Association asserts that the cases cited by ZSLL are all distinguishable because they either involved the insured committing fraud or making misrepresentations, or insureds engaging in behavior which they intended to cause harm.

"An intentional act is not an 'accident' within the plain meaning of the word." *Royal Globe Ins. Co. v. Whitaker*, 181 Cal.App.3d 532, 537 (1986). "Under California law, the word 'accident' in the coverage clause of a liability policy refers to the conduct of the insured for which liability is sought to be imposed on the insured." *Delgado*, 47 Cal. 4th at 311. "An accident does not happen when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." *Fire Ins. Exchange v. Superior Court (Bourguignon)*, 181 Cal.App.4th 388, 392 (2010) (holding that "building a structure that encroaches onto another's property is not an accident even if the owners acted in the good faith but mistaken belief that they were legally entitled to build where they did"). "Where the insured intended all of the acts that resulted in the victim's injury, the event may not be

United States District Court
Northern District of California

deemed an 'accident' merely because the insured did not intend to cause injury.  The insured's subjective intent is irrelevant." *Id*. at 392 (internal citations omitted).  "That does not mean, however, that coverage is always precluded merely because the insured acted intentionally and the victim was injured." *State Farm Gen. Ins. Co. v. Frake*, 197 Cal.App.4th 568, 580 (2011) (internal quotation marks omitted).  "Rather, an accident may exist 'when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity.'" *Id*. (quoting *Merced Mut. Ins. Co. v. Mendez*, 213 Cal.App.3d 41, 50 (1989)).

The Court concludes that the Association's complaint in the Underlying Action alleges that the property damage is the result of intentional actions by Comac's principal, and thus that the property damage is not caused by an "accident."  The Association alleges that Comac's principal intentionally covered up various construction defects rather than correcting them in order to maximize profits for Comac, that "any contractor who chose not to remedy [the defects] would be doing so with actual or constructive knowledge that injury was a probable result," and that the property was in fact damaged as a result of the failure to correct the defects.  *See* Dkt. No. 33-6 ¶¶ 30-53. The Association does not allege that there were any intervening, unexpected causes of the alleged property damage, but rather that Comac's deliberate acts caused the property damage.

The Association argues that the property damage qualifies as an "accident" because the Underlying Action does not allege that Comac intended to cause any property damage.  However, the cases cited by both parties consistently hold that "the term 'accident' does not apply where an intentional act resulted in unintended harm."  *Frake*, 197 Cal.App.4th at 582 (discussing California law and holding that there was no "accident" when the insured intentionally struck his friend in the groin, even though the insured did not intend to cause injury); *Merced*, 213 Cal.App.3d at 48 ("[A]ppellants contend an accident occurs even if the acts causing the alleged damage were intentional as long as the resulting damage was not intended.  The argument urged by appellants has been repeatedly rejected by the appellate courts"); *Quan v. Truck Ins. Exch*., 67 Cal.App.4th 583, 599 (1998) ("[W]hether the insured intended the harm that resulted from his conduct is not determinative. The question is whether an accident gave rise to claimant's injuries").

**II.     "Expected or intended" exclusion and Cal. Ins. Code § 533**

ZSLL also argues that Comac's alleged willful misconduct is subject to the policy's exclusion for property damage "expected or intended from the standpoint of the insured," as well as Cal. Insurance Code § 533, which prohibits indemnification for the willful acts of an insured.

Cal. Ins. Code § 533 provides,

> An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others.

Cal. Ins. Code § 533.[3]  A clause excluding intentional injury is treated as having the same meaning as the language in § 533.  *Delgado*, 47 Cal.4th at 313-14.

ZSLL relies on *Acosta v. Glenfed Dev. Corp*., 128 Cal.App.4th 1278 (2005), in which the Court of Appeal addressed the nature of "willful misconduct" under Cal. Code of Civil Proc. § 337.15(f), the statute of repose.  In *Acosta*, the plaintiff homeowners alleged that the defendant developers and general contractors improperly prepared the soil and concrete foundations upon which their homes were constructed.  *Id.* at 1287.  The plaintiffs alleged that the structural framing in the houses was so negligently constructed as to constitute defective and dangerous conditions, and that as a result, substantial latent defects existed in the houses.  *Id.*  In order to avoid the ten-year statute of repose under § 337.15, the plaintiffs alleged that the acts and omissions that caused the defects were the result of the defendants' willful misconduct.  *Id.*

The Court of Appeal reversed summary judgment in favor of the defendants, holding that the plaintiff homeowners had created a triable issue regarding the application of the willful misconduct exception because they had submitted expert declarations opining that the defects "appeared to be the result of willful misconduct by defendants in that they were 'so serious and prevalent that they were either the result of [a] deliberate decision to cut corners for cost savings or the result of a near total, virtually reckless, failure by the developer to adequately supervise

---

[3] The Court notes the difference in spelling between "wilful" under Cal. Ins. Code § 533 and "willful" under Cal. Code Civ. Proc. § 337.15(f).  In the interest of consistency, the Court will use the "willful" spelling unless quoting from the statute or a case using the "wilful" spelling.

United States District Court
Northern District of California

1   subcontractors.'" *Id.* at 1289 (quoting expert reports).  In reaching its conclusion, the Court of

2   Appeal  discussed  what  constituted  "willful  misconduct"  under  Cal.  Code  of  Civil  Proc.

3   § 337.15(f):

> Unfortunately, there is little case authority discussing willful misconduct as the
> term is used in section 337.15, subdivision (f).  The Supreme Court, however, did
> recently discuss generally the issue of liability for willful or wanton behavior.
> (*Calvillo–Silva v. Home Grocery* (1998) 19 Cal.4th 714, 80 Cal.Rptr.2d 506, 968
> P.2d 65, *disapproved on another ground in Aguilar, supra*, 25 Cal.4th at p. 853,
> 107 Cal.Rptr.2d 841, 24 P.3d 493, fn. 19 [*Calvillo–Silva*].)  It noted that "the case
> law  appears  relatively  uniform  on  the  following  points.   First,  it  is  generally
> recognized  that  willful  or  wanton  misconduct  is  separate  and  distinct  from
> negligence,  involving  different  principles  of  liability  and  different  defenses.
> [Citations.]  Unlike negligence, which implies a failure to use ordinary care, and
> even gross negligence, which connotes such a lack of care as may be presumed to
> indicate a passive and indifferent attitude toward results, willful misconduct is not
> marked  by  a  mere  absence  of  care.   Rather,  it  involves  a  more  positive  intent
> actually  to  harm  another  or  to  do  an  act  with  a  positive,  active  and  absolute
> disregard of its consequences. [Citations.]  So, for example, a person who commits
> an assault and battery may be guilty of willful misconduct [citations], but a person
> who  fails  to  perform  a  statutory  duty,  without  more,  is  not  guilty. [Citations.]
> While  the  word  willful  implies  an  intent,  the  intention  must  relate  to  the
> misconduct  and  not  merely  to  the  fact  that  some  act  was  intentionally  done.
> [Citations.]  Thus, even though some cases of negligence may involve intentional
> actions,  the  mere  intent  to  do  an  act  which  constitutes  negligence  is  not  enough  to
> establish  willful  misconduct. [Citations.] [¶]   Second,  willfulness  generally  is
> marked by three characteristics: (1) actual or constructive knowledge of the peril to
> be apprehended; (2) actual or constructive knowledge that injury is a probable, as
> opposed  to  a  possible,  result  of  the  danger;  and  (3)  conscious  failure  to  act  to  avoid
> the  peril. [Citations.]   As  the  foregoing  suggests,  willful  misconduct  does  not
> invariably entail a subjective intent to injure.  It is sufficient that a reasonable
> person  under  the  same  or  similar  circumstances  would  be  aware  of  the  highly
> dangerous character of his or her conduct. [Citations.]" (*Calvillo–Silva, supra*, at
> pp. 729–730, 80 Cal.Rptr.2d 506, 968 P.2d 65; *see also Ewing v. Cloverleaf Bowl,
> supra*, 20 Cal.3d at p. 402, 143 Cal.Rptr. 13, 572 P.2d 1155; *Shell Oil Co. v.
> Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 742–743, 15 Cal.Rptr.2d
> 815.)

21   *Id.* at 1294-95.

22       The Association argues that *Acosta* is inapposite because that case discusses "willful

23   misconduct" under Cal. Code Civ. Proc. § 337.15(f), and does not address willfulness under Cal.

24   Ins. Code § 533.  The Association argues that the standard for committing a "willful act" pursuant

25   to § 533 is higher than the standard for "willful misconduct" under § 337.15(f) because § 533

26   requires a subjective intent to harm, whereas it is sufficient for "willful misconduct" under

27   § 337.15(f) that a reasonable person under the same or similar circumstances would be aware of

28   the highly dangerous character of his or her conduct.

10

The Association relies on *Clemmer v. Hartford Life Insurance Company*, 22 Cal.3d 865, 887 (1978), to contend that for an act to be "willful" pursuant to § 533, the insured must not only have intended the act that caused the harm, but must also have had a "preconceived design to inflict injury."  In *Clemmer*, the widow and minor son of a murder victim sued to recover from the slayer's insurer the amount of a wrongful death judgment they had previously obtained against the slayer.  *Id*. at 871-72.  The insurance company defended the action on the ground that the killing of the deceased was a "willful act" and thus excluded from coverage under § 533.  *Id*. at 872.  The *Clemmer* court held that even an act which is "intentional" or "willful" within the meaning of traditional tort principles will not exonerate the insurer from liability under § 533 unless it is done with a "preconceived design to inflict injury."  *Id*. at 887.

However, as the California Supreme Court later explained in *J.C. Penney Casualty Insurance Company v. M.K.*, 52 Cal.3d 1009 (1991), "[t]he brief reference in *Clemmer* to a 'preconceived design to inflict injury' must be read in context.  The inquiry in *Clemmer* was limited to the unresolved mental capacity of the insured, i.e., whether he was legally sane when he committed the killing. There was no issue as to whether the insured intended to shoot his victim five times (including once in the head at close range) but not to harm the victim."  *Id*. at 1023. The "preconceived design to inflict harm" requirement  in *Clemmer* was thus only relevant to the issue of whether the insured intended to commit a wrongful act and does not apply "when the insured seeks coverage for an intentional and wrongful act if the harm is inherent in the act itself."  *Id*. at 1025.  "Subsequent decisions have made clear that the 'preconceived design to injure' standard is relevant only when the insured's mental capacity is an issue or the insured's intent or motive might justify an otherwise wrongful act."  *Downey Venture v. LMI Ins. Co*., 66 Cal. App. 4th 478, 500 (1998) (discussing *Clemmer* and subsequent cases).

In *Downey Venture*, the California Court of Appeal held that "[a] 'wilful act' under section 533 will include either 'an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damage is highly probable or substantially certain to result.'  It also appears that a wilful act includes an intentional and wrongful act in which '. . . the harm is inherent in the act itself.'"  *Downey Venture*, 66 Cal. App. 4th at 500 (quoting *Shell Oil*

1   *Co. v. Winterthur Swiss Ins. Co*., 12 Cal.App.4th 715, 742 (1993), and *J.C. Penney*, 52 Cal.3d at

2   1025)).   This standard is not meaningfully different from the *Acosta* court's articulation of "willful

3   misconduct" under § 337.15(f) as "involv[ing] a more positive intent actually to harm another or

4   to do an act with a positive, active and absolute disregard of its consequences" and  "not invariably

5   entail[ing] a subjective intent to injure. It is sufficient that a reasonable person under the same or

6   similar circumstances would be aware of the highly dangerous character of his or her conduct."

7   *Acosta*, 128 Cal.App.4th at 1294-95.

8        The Court concludes that the Association's allegations of Comac's willful misconduct

9   bring the Underlying Action within the scope of the "intended or expected" exclusion and Cal. Ins.

10  Code § 533.    The Association alleges in the Underlying Action that the construction defects

11  would have been observable by any knowledgeable contractor or supervisor and "any contractor

12  who chose not to remedy [the defects] would be doing so with actual or constructive knowledge

13  that injury was a probable result" and "any knowledgeable construction supervisor who chose not

14  to direct the contractor to remedy the condition would have done so with actual or constructive

15  knowledge that injury was a probable result."   Dkt. No. 33-6 at ¶ 53. Under § 533, willful acts

16  include those "intentionally performed with knowledge that damage is highly probable or

17  substantially certain to result," not merely acts performed with the intent to cause injury.  *Downey*

18  *Venture*, 66 Cal. App. 4th at 500; *see also Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12

19  Cal.App.4th 715, 746 (1993) (holding policy language excluding coverage for damage that is

20  "expected or intended" "connotes subjective knowledge of or belief in an event's probability.  We

21  see no material difference if the degree of that probability is expressed as substantially certain,

22  practically certain, highly likely, or highly probable.").

23

24

25

26

27  ///
    ///

28  ///

United States District Court
Northern District of California

## CONCLUSION

Accordingly, the Court concludes that ZSLL has no duty to defend or indemnify Comac in the Underlying Action, and therefore the Court GRANTS plaintiff's motion for partial summary judgment.

**IT IS SO ORDERED**.

Dated: September 27, 2016

_____
SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California